IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| RONALD FISHER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 7:14CV00290 |
| | ) |
| PORTFOLIO RECOVERY ASSOC., LLC, | ) |
| COLBY EYRE | ) |
| | ) Jury Trial Demanded |
| | ) |
| Defendants. | ) |

## COMPLAINT

### JURISDICTION AND VENUE

1. Jurisdiction of this Court arises under 28 U.S.C. § 1331 and pursuant to 15 U.S.C. § 1692k(d).

2. This action arises out of Defendants' numerous and repeated violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et seq. (hereinafter referred to as "FDCPA"), in their illegal efforts to collect a consumer debt from Plaintiff.

3. Venue is proper in this District because the acts and transactions occurred here and the Plaintiff resides here.

### PARTIES

4. Plaintiff Ronald Fisher, (hereinafter "Plaintiff") is a natural person who resides in the City of Rural Retreat, Virginia, and a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

5. Defendant Portfolio Recovery Associates, LLC, (hereinafter "Defendant Portfolio") is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) and a for-profit

corporation, and may be served through its registered agent as follows: National Registered Agents Inc., 4701 Cox Road, Suite 301, Glen Allen, Virginia, 23060.

6. Defendant Colby Eyre, (hereinafter, Defendant "Eyre") is a natural person employed as a "Custodian of Records" for Defendant Portfolio and routinely signs affidavits for purposes of filing State court lawsuits against consumers for collection of debts. Defendant Eyre is an agent of Defendant Portfolio and is a "debt collector" as that term is defined by 15 U.S.C. §1692a(6), and may be served at his business address: Portfolio Recovery Associates, LLC, 140 Corporate Blvd., Norfolk, VA 23502.

7. Defendant Portfolio, Defendant Eyre may at times be referred to, collectively, as "the Defendants."

## FACTUAL ALLEGATIONS

8. Defendant Portfolio is engaged in the business of purchasing charged-off consumer debts and attempting to collect them from consumers.

9. Defendant Portfolio pays pennies on the dollar for the debts it purchases.

10. Defendant Portfolio makes a business decision not to obtain a copy of the written contracts signed by consumers or other important evidence of the alleged debt when purchasing charged-off consumer debts or prior to filing State court collection lawsuits against consumers.

11. Defendant Portfolio made such a business decision with regard to Plaintiff, and did file a State court action in an attempt to collect a debt against Plaintiff.

12. The Defendants have alleged in a prior State court lawsuit that Plaintiff incurred an obligation to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family or household purposes, and is therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5), namely, a credit card debt originally owed to or serviced by GE Capital Retail Bank, (hereinafter "GE Capital").

13. Plaintiff's alleged debt was apparently consigned, sold or otherwise transferred to Defendant Portfolio for collection from Plaintiff.

14. When purchasing charged-off consumer debts, Defendant Portfolio makes an intentional business decision not to obtain knowledge as to whether a written contract existed between the original creditor of the debt and the consumer, or if there was other documentation showing when or how the debt was incurred, or anything beyond very rudimentary information which would allow them to properly calculate the amount of debt owed by a consumer at the time they file a collection lawsuit. The only documentation or information on the alleged account received by Defendant Portfolio is the consumer's name, last known address, telephone number, social security number, amount due, name of original creditor, original account number, and in some instances, alleged account statements dating back, typically two years or less, from the time the alleged account was charged off.

15. The lack of documentation that debt buyers such as Defendant Portfolio receive when they purchased the debt is reflected in the price of the debt, sometimes a little as a few pennies on the dollar.

16. When Defendant Portfolio bought the debt they allege is owed by Plaintiff, they intentionally made a business decision not to receive any of the basic documents or evidence needed to demonstrate that the amount they claimed that was due from Plaintiff, as either principal or interest, was actually owed by him, and they did not possess any such documents as of the date they filed the State court action based on an affidavits prepared by Defendant Portfolio's agent, Defendant Eyre.

17. Specifically, at the time Defendant Portfolio purchased Plaintiff's alleged Account, they did not receive any documents which (a) could be used as evidence to show, in a court of law, that Plaintiff had entered into a contract with any entity creating the debt or opening an Account, (b) show how the amount claimed as due was calculated or what Plaintiff received in return for incurring the alleged debt, (c) show how the interest on the debt was to be calculated or how payments were to be applied to principal and interest and whether any payments had been properly applied pursuant to any agreement between the original creditors and Plaintiff, (d) show whether Defendants were entitled to sue in State court rather than arbitrate any alleged claims against Plaintiff, and if they did have the right to sue, whether Defendants were entitled to any amounts of prejudgment interest, and if so, at what rate and from what date, and (e) show when the alleged debt went into default and what acts by Plaintiff caused the default. Further, Defendants did not possess, and did not have access to, any such documents as of the date they filed the State court action.

18. When Defendant Portfolio purchased Plaintiff's alleged Account they did not receive any supporting documentation of the debt, including, but not limited to, (a) the alleged

underlying Contracts between GE Capital and Plaintiff, (b) anything bearing Plaintiff's signature binding him to any contractual obligation, (c) documentation showing how all charges to the alleged account were incurred by Plaintiff with regard to the amount being sued upon by Defendants, (d) monthly billing statements which encompass any charges that were incurred relating to the amount being sued upon, (e) a complete history of the payments made on the account to ensure proper accounting by the original creditor and any alleged assignees, (f) any documents showing how the amount of the alleged debt was calculated, or (g) any information showing how the interest and principal on the debt were calculated with regard to the alleged outstanding balance.

19. Instead, when Defendant Portfolio purchased the Account, all they received was the aforementioned limited information about Plaintiff and the alleged debt, which was transmitted electronically as part of a spreadsheet along with thousands of other charged-off accounts.

20. Prior to the Defendants filing the State court collection lawsuit against Plaintiff, they failed to obtain any supporting documentation of the debt, including, but not limited to, (a) the alleged underlying Contracts between GE Capital and Plaintiff, (b) anything bearing Plaintiff's signature, (c) documentation regarding what Plaintiff purchased or when he made a purchase as it relates to the amount being sued upon, (d) a payment history relating to the period of time in which the alleged debt was incurred as it relates to the amount being sued upon, or (e) documents showing how the amount of the alleged debt was calculated.

21. Defendant Portfolio has a "pattern and practice" of filing collection lawsuits against consumers in Virginia on debts (a) after making an intentional business decision not to obtain knowledge as to whether a written contract exists between the original creditor and the consumer or whether other documentation exists showing when or how the debt was incurred, (b) prior to making a reasonable and adequate investigation as to whether the consumer properly owes the amount of debt they are attempting to collect, and (c) by attaching affidavits from individuals whose knowledge of the specifics of the original debt is limited or non-existent.  Defendants do all of this with the intention of either obtaining a default judgment or coercing the consumer into a settlement.

22. Defendant Portfolio files the collection lawsuits against Virginia consumers, and has filed such a collection lawsuit against Plaintiff, knowing they do not have the means, and do not intend to obtain the means, to prove the alleged debt.

23. Because debt buyers such as Defendant Portfolio lack documentation necessary to establish a claim based on monies advanced or loaned, they often file collection lawsuits

against Virginia consumers on a sworn account, and attempt to support the claim with a false, deceptive and misleading affidavit or affidavits.

24. In a majority of the cases, debt buyers such as Defendant Portfolio obtain a default judgment and the sufficiency of the debt buyer's affidavit or their ability to prove the related account through admissible evidence is not challenged.

25. Debt buyers such as Defendant Portfolio, and Defendant Portfolio themselves, file hundreds of cases a month in jurisdictions throughout Virginia, including Plaintiff's jurisdiction, Rural Retreat, Virginia. The Defendant does so with the hopes that either the consumer does not show up at all, or if they show up, they do not challenge the amount sued upon. In either instance, the Defendant will receive judgment based on the false and misleading affidavits filed with the State court.

26. In those few instances where the consumer has the wherewithal, means and ability to defend the collection lawsuit, as to liability or the amount sued upon, debt buyers such as the Defendant Portfolio will dismiss ("non-suit") the case rather than risk having its deceptive practices exposed.

27. Defendant Portfolio also engages in a "pattern and practice" of allowing the State Court to schedule pleadings and a trial date; requiring the debtor to file a "Grounds Of Defense" or suffer summary judgment, and requiring the debtor, or his counsel, to appear at the trial date only for the Defendants to inform the State court that it has no witnesses present and is requesting a non-suit (dismissal without prejudice). On occasion, Defendant Portfolio will ask that the case be non-suited prior to the actual trial date.

28. After a reasonable opportunity for further investigation or discovery, Plaintiff believes there will be evidence to show that the Defendants request a non-suit in more than ninety-nine percent (99%) of the cases where a consumer challenges the validity of the debt and/or refuses to settle or make payment arrangements with the Defendants.

29. In some instances, debt buyers such as Defendant Portfolio, knowing that they cannot prove the alleged account with the limited documentation they possess or have access to, will subpoena the consumer, who is the defendant in a lawsuit in which the debt buyer is plaintiff, in an attempt to prove its case through the very person they are suing. To be clear: After the consumer has already disputed the debt through pleadings, the Defendants will subpoena the consumer in an attempt to prove its case against the consumer. This is done because Defendant Portfolio is unable to gain default judgment against a consumer who appears in court and disputes the debt, and further because the

Defendants have no ability to prove a prima facie case in a lawsuit that they have filed against the consumer

30. With regard to Plaintiff in particular, the Defendants engaged in such a pattern of practice and filed a State court lawsuit against Plaintiff based upon an affidavit that gives a false impression to the State court, and to the consumer, that Defendants have the ability to prove the alleged debt through admissible business records and competent testimony of one of many "Custodian of Records" employed by Defendant Portfolio, in this instance, Defendant Eyre.

31. The Defendants filed this lawsuit despite the fact that they had no admissible evidence showing that Plaintiff owed the amount of debt they were alleging he owed, and did so prior to making a reasonable and adequate investigation as to whether Plaintiff actually owed the amount of debt they were alleging he owed.

32. The Defendants used false, deceptive, and misleading practices or means; and engaged in abusive and harassing practices or means, in connection with the civil lawsuits and in certain other actions by Defendants relating to these lawsuits.  As a result of these practices, Defendants have violated numerous and multiple provisions of the FDCPA.

### JUNE 12, 2013 COLLECTION LAWSUIT

33. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

34. Within one (1) year prior to the filing of this Complaint, on or about June 12, 2013, the Defendants, in The County of Smyth, General District Court, Virginia, caused to be issued a Civil Warrant In Debt (see Attached Exhibit 1); the Defendants also filed a sworn Affidavit with the Warrant In Debt (see Attached Exhibit 2) and also filed a separate "Statement" of the alleged account with the Warrant In Debt (see Attached Exhibit 3).  The Affidavit is largely a regurgitation of the information contained in the "Statement," with additional boilerplate language alleging a debt incurred and a failure to repay that debt.

35. The Warrant In Debt, the Affidavit, and the "Statement," labeled as Exhibits 1, 2 and 3 respectively, will hereinafter be referred to collectively as "Collection Lawsuit."

## Warrant In Debt Filed In Collection Lawsuit
## State Court Case Number GV1300726-00

36. The Warrant In Debt was filed and served on Plaintiff in connection with the collection of a debt and in an attempt to collect a debt, and is a "communication" as defined by 15 U.S.C. § 1692a(2).

37. Defendant mailed a Warrant in Debt to the Plaintiff when they filed their collection lawsuit. The Warrant in Debt contained various assertions regarding the subject accounts.

38. The Warrant in Debt failed to inform the Plaintiff that the Defendant was a debt collector. The Warrant in Debt and other litigation documents received by the Plaintiff were the initial communication from the Defendant. These documents failed to inform the Plaintiff that the Defendant was a debt collector attempting to collect a debt and that any information obtained from the Plaintiff would be used for that purpose.

39. These disclosures required by 15 U.S.C. §1692 e(11) would have alerted the Plaintiff that the Defendant fell within the definition of a "debt collector" as that term is defined by 15 U.S.C.§1692a(6) thus triggering their rights under the FDCPA, including, but not limited to, their right to verification of the debt.

40. Thereafter, the Defendant never informed the Plaintiff of their right to verification of the alleged debts pursuant to 15 U.S.C.§1692g.

41. This failure was not inadvertent. As previously described, the Defendants are debt buyers, removed from the original creditor from the chain of title by one or more entities. The Defendants purchase debts from other debt buyers. The Defendant lacked the information within the files of the original creditors that would demonstrate, for example, the full history of the accounts, the portion of the debt was attributable to finance charges and late fees and penalties.

42. Furthermore, by bringing a legal action on the alleged debt in a jurisdiction where Plaintiff did not reside and did not sign any alleged contract, the Defendants have violated 15 U.S.C. §1692i(a)(2).

43. The Warrant in Debt Claims that Plaintiff owes Defendant Portfolio "a debt in the sum of $2113.81 net of any credits, with interest at 6 % from DOJ until paid. $56.00 costs and $ .00 attorney's fees with the basis of this claim being . . . Open Account, Contract, Other

with explanation "Defaulted credit agreement for former GE CAPITAL RETAIL BANK account, which has been assigned to PORTFOLIO RECOVERY ASSOCIATES, LLC. See Exhibit(s) and Affidavit(s) Incorporated by Reference."

44. The Warrant In Debt, filed in conjunction with the false and misleading affidavit, and under circumstances where there are not adequate procedures in place to ensure the reliability of the amount being sued upon, constituted the use of a false, deceptive, and misleading representation or means in connection with the collection of a debt or attempt to collect a debt, in violation of 15 U.S.C. §§ 1692e and 1692e(10), and was an unfair or unconscionable means to collect or attempt to collect a debt in violation of 15 U.S.C. § 1692f.

### Sworn Affidavits Filed With Collection Lawsuit

45. The sworn Affidavit was filed and served in connection with the collection of a debt and in an attempt to collect a debt, and was a "communication" as defined by 15 U.S.C. § 1692a(2). Any place where the printed name is given or required on the Affidavits, it is produced by some type of name stamp; and anytime a date is given or required it is produced by a date stamp.

46. The first sworn Affidavit is reproduced verbatim below (also attached as Exhibit 2):

AFFIDAVIT

STATE OF CALIFORNIA
CITY OF SAN DIEGO ss.


I, the undersigned, ____Colby Eyre____, Custodian of Records, for Portfolio Recovery Associates, LLC hereby depose, affirm and state the following:

1. I am a competent to testify to the matters contained herein.

2. I am an authorized employee of Portfolio Recovery Associates, LLC, ("Account Assignee") which is doing business at Riverside Commerce Center, 120 Corporate Boulevard, Norfolk, Virginia, and I am authorized to make the statements, representations and averments herein, and do so based upon a review of the business records of the Account Assignee and those records transferred to Account Assignee from GE CAPITAL RETAIL BANK/WALMART ("Account Seller"),

which have become a part of and have integrated into Account Assignee's business records, in the ordinary course of business.

3. According to the business records, which are maintained in the ordinary course of business, the account, and all proceeds of the account are now owned by the Account Assignee, all of the Account Seller's interest in such account having been sold, assigned and transferred by the Account Seller on 1/31/2012. Further, the Account Assignee has been assigned all of the Account Seller's power and authority to do and perform all acts necessary for the settlement, satisfaction, compromise, collection or adjustment of said account, and the Account Seller has retained no further interest in said account or the proceeds thereof, for any purpose whatsoever.

4. According to the records transferred to the Account Assignee from Account Seller, and maintained in the ordinary course of business by the Account Assignee, there was due and payable from **RONALD FISHER** ("Debtor and Co-Debtor") to the Account Seller the sum of **$2,113.81** with respect to account number **ending in 0529** as of the date of **12/18/2011** with there being no known un-credited payments, counterclaims or offsets against the said debt as of the date of the sale.

5. According to the account records of said Account Assignee, after all known payments, counterclaims, and/or setoffs occurring subsequent to the date of sale, Account Assignee claims the sum of **$2,113.81** as due and owing as of the date of this affidavit.

6. Plaintiff believes that the defendant is not a minor or an incompetent individual, and declares that the Defendant is not on active military service of the United States.

Portfolio Recovery Associates, LLC

_____"Signature of Colby Eyre"_____
By: ___Colby Eyre___, Custodian of Records

Subscribed and sworn to before me on ___Dec 18 2012_____

_____"Signature and Seal of Notary Public"_____

## AFFIDAVIT PURSUANT TO VA CODE §8.01-28, §8.01-15.2 AND §8.01-279

47. The Affidavit Sworn by Defendant Eyre, filed in the Collection Lawsuit, was false, deceptive and misleading because the Affidavit misleads the State court, and the consumer, into believing that Defendant in fact possesses the ability to introduce business records or other competent testimony to prove the debt in the amount sued upon.

48. Taken as a whole, even the most sophisticated consumer would think that the Affiant, Defendant Eyre, or some agent or employee of Defendant Portfolio, had admissible evidence in the form of business records, which could be authenticated and otherwise properly admitted into evidence to prove the alleged debt.

49. The fact of the matter is, Defendants did not have admissible documentation and had no ability to acquire admissible documentation in order to successfully prosecute the lawsuit filed against Plaintiff in State court.

50. Defendant Portfolio purchases electronic business records of old accounts for pennies on the dollar. Defendant Eyre reviewed these electronic records and swore out an Affidavit alleging that, at least Defendant Eyre, is competent to testify to matters stated in the Affidavit. Defendant Eyre does all of this with limited knowledge of Plaintiff's Account, namely that knowledge based on a cursory review of the purchased electronic records. The Affidavit used to prosecute the Collection Lawsuit was made by Defendant Eyre by reproducing the information contained in the electronic record in a purely mechanical way, with no evidence of personal thought or understanding.

51. Defendant Eyre produced the Affidavit without any review of any supporting documentation created during the relationship between the original creditor and Plaintiff. As Custodians of Records for Defendant Portfolio, Defendant Eyre simply did not have access to sufficient records to ensure the reliability or accuracy of the amount sued upon.

52. However, the Affidavit creates a false impression that Defendant Eyre could testify competently, and properly introduce business records, concerning the alleged debt being sued upon. In fact, the first line of the affidavit indicates that Defendant Eyre is "competent to testify to the matters contained herein." The affidavit creates the

impression that they have the ability to admit evidence concerning all the assertions in the affidavit.

53. The Affidavits also claim that Defendant Portfolio has received "all the Account Seller's power and authority to do and perform all the acts necessary for the settlement, satisfaction, compromise, collection or adjustment of said account." However, Defendant Portfolio purchased the alleged account, along with thousands of other defaulted accounts, without recourse as to the collectability of the alleged account.

54. This is the environment that debt buyers such as Defendant Portfolio are operating within. They are purchasing bad debt. Inherent in this process is the fact that there must be something wrong with the debt or it would likely have not been sold for pennies on the dollar. When Defendant Portfolio buys this debt, they receive no assurances that the accounts are even collectible, not to mention accurate. Further, contrary to the assertions contained within the Affidavits, the Defendants do not possess or have access to all of the appropriate account details that would allow them to ensure that the amounts they are suing for are accurate and are properly due and owing.

55. The only records that Defendant Eyre was able to review prior to signing the sworn Affidavits were these limited computer records apparently obtained by Defendant Portfolio from GE Capital.

56. Without any records of the originator of the debt available for Defendant Eyre to review to determine if there was a contract signed by Plaintiff and, if so, whether the amount of the debt as to principal or interest alleged being owed by Plaintiff in the Affidavit was correct, it was impossible for Defendant Eyre to truthfully make a sworn affidavit as to the correctness of the amount owed, if any, by Plaintiff.

57. Proceeding on this false, misleading and deceptive affidavit, Defendants filed a lawsuit knowing it had no ability to prove the allegations which formed the basis of said lawsuit. The Affidavit alleges facts in which none of the Defendants have personal knowledge, despite their assertion that the Custodian of Records is competent to testify to the matters stated in the Affidavit. This assertion of competency, combined with the allegations contained in the Affidavit would create a false impression in the mind of the least sophisticated consumer that Defendants had the legal right and the legal ability to collect the debt in the manner and in the amount in which they attempted to collect it. U.S. v. National Financial Services, Inc., 98 F.3d 131, 136 (4th Cir. 1996) ("[E]valuating debt collection practices with an eye to the 'least sophisticated consumer' comports with basic consumer-protection principles: 'The basic purpose of the least-sophisticated-consumer standard is to ensure that the FDCPA protects all consumers, the gullible as well as the

shrewd. This standard is consistent with the norms that courts have traditionally applied in consumer-protection law.'" (quoting Clomon v. Jackson, 988 F.2d 1314, 1318 (2nd Cir. 1993)).

58. The sworn Affidavit claiming testimonial competence implied that Defendant Eyre had personal knowledge of Plaintiff's Account. In fact, Defendant Eyre was not competent to testify, and had no personal knowledge of the account. Thus, the Affidavit was an intentional attempt to mislead the State court and Plaintiff into believing that Defendant Eyre was someone who had personal knowledge of the amount of debt allegedly owed by Plaintiff and that Plaintiff in fact owed the debt, when it was not possible for Defendant Andrews to have such personal knowledge.

59. Further, it was an attempt to mislead the State court and Plaintiff into believing that Defendant Eyre had an ability to testify to admissible evidence concerning the debt and that this evidence would be admitted under the "Business Records" exception to the rule against the introduction of hearsay evidence. This evidence would not have been admissible because the foundational requirements of personal knowledge and entry of the record at or near the time of the record's creation did not in fact exist, contrary to the assertions and implied assertions of Defendant Eyre in his sworn Affidavit.

60. The only records held by Defendant Portfolio at the time Defendant Eyre signed the sworn Affidavit were computer records, which contained very limited information about Plaintiff and his alleged debt. These computer records are not competent evidence simply because the Defendants desire them to be. The Defendants cannot give adequate assurance that the records of the alleged account have the guarantees of trustworthiness and reliability that forms the basis of the business records exception.

61. In addition, the Defendants cannot show that they independently verified the accuracy of the account sued upon to permit the Defendants to rely upon the integration of GE Capital's business records into Defendant Portfolio's business records. The Defendants simply did not have access to enough information about the alleged account to do so.

62. Even assuming that the records could be introduced as competent evidence, Defendants still cannot prove that Plaintiff is liable for the alleged account. No contract or other writing signed by Plaintiff has been produced by the Defendants at any time prior to, during, or subsequent to the State court lawsuits.

63. Defendant Portfolio intentionally made a business decision to file the Collection Lawsuit without (a) obtaining knowledge as to whether a written contract existed between GE Capital and Plaintiff or if there was other documentation showing when or how the debt

was incurred, and (b) making a reasonable and adequate investigation as to whether Plaintiff owed the amount of debt they were attempting to collect, but to rely solely on other parties for this information.

64. The Defendants' business decision to rely entirely on GE Capital or an assignee of GE Capital as to the amount of debt allegedly owed by Plaintiff without (a) obtaining knowledge as to whether a written contract existed between GE Capital and Plaintiff or if there was other documentation showing when or how the debt was incurred, and (b) making a reasonable and adequate investigation as to whether Plaintiff owed the amount of debt they were attempting to collect, was not a procedure reasonably adapted to avoid using a deceptive or misleading representation or means in connection with the collection of a debt.

65. By making a business decision to intentionally not (a) obtain knowledge as to whether a written contract existed between GE Capital and Plaintiff or if there was other documentation showing when or how the debt was incurred, and (b) make a reasonable and adequate investigation as to whether Plaintiff owed the amount of debt they were attempting to collect, prior to filing a collection lawsuit, the Defendants used a deceptive and misleading representation in connection with the collection of a debt with regard to the amount allegedly owed by Plaintiff in violation of 15 U.S.C. §1692e and 1692(e)10 and is an unfair or unconscionable means to collect or attempt to collect the debt in violation of 15 U.S.C. § 1692f.

66. The Affidavits filed in connection with the Collection Lawsuit alleged information that the Defendants knew or should have known was not true and therefore was the use of a false, deceptive, and misleading representation or means in connection with the collection of a debt or attempt to collect a debt, in violation of 15 U.S.C. §§ 1692e and 1692e(10), and is an unfair or unconscionable means to collect or attempt to collect a debt in violation of 15 U.S.C. § 1692f.

67. The above-detailed conduct by Defendants in connection with collection of the debt and in an attempt to collect the debt was conduct in violation of numerous and multiple provisions of the FDCPA including, but not limited to the above-cited provisions of the FDCPA.

68. By filing the Collection Lawsuit based on false and misleading affidavit in violation of the FDCPA, the Defendants caused Plaintiff to be served with a lawsuit by a sheriff's deputy in a small community.

69. Plaintiff has suffered actual damages as a result of these illegal communications, lawsuits and collection attempts by Defendants in the form of anger, anxiety, severe emotional distress, fear, frustration, upset, humiliation, and embarrassment, amongst other emotions.

## DAMAGES

70. Plaintiff is informed and believes and, therefore, alleges that Defendants knowingly and intentionally engaged in harassing, abusive, false, misleading, unfair, deceptive, unconscionable and illegal debt collection practices.

71. The Defendants failed to maintain (i.e., actually employ or implement) procedures to avoid making errors and violating the FDCPA prior to, or during, the collection of the alleged debt against Plaintiff.

## RESPONDEAT SUPERIOR LIABILITY

72. In addition to their individual liability under the FDCPA, the acts and omissions of Defendant Eyre, as an agent for Defendant Portfolio, and who communicated and interacted with Plaintiff as described herein, were committed within the time and space limits of their agency relationship with their principal, Defendant Portfolio.

73. The acts and omissions by Defendant Eyre were incidental to, or of the same general nature as, the responsibilities they were authorized to perform by Defendant Portfolio in collecting consumer debts.

74. By committing these acts and omissions against Plaintiff, Defendant Eyre was motivated to benefit her principal, Defendant Portfolio.

75. Defendant Portfolio is therefore liable to Plaintiff through the Doctrine of Respondeat Superior for the intentional and negligent acts, errors and omissions done in violation of federal law by the debt collectors employed as agents by Defendant Portfolio including, but not limited to violations of the FDCPA, in their attempts to collect the debt from Plaintiff.

## DEMAND FOR TRIAL BY JURY

76. Plaintiff is entitled to and hereby respectfully demands a trial by jury on all issues so triable. US Const. amend. 7. Fed.R.Civ.P. 38.

## CAUSES OF ACTION

### COUNT I.

### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT 15 U.S.C. §§ 1692 et seq.

77. Plaintiff incorporates by reference all of the above paragraphs as though fully stated herein.

78. The foregoing acts and omissions of Defendants constitute numerous and multiple violations of the FDCPA including, but not limited to each and every one of the above-cited provisions of the FDCPA, 15 U.S.C. §§ 1692 et seq., with respect to Plaintiff.

79. As a result of Defendants' multiple violations of the FDCPA, Plaintiff is entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1), in an amount to be determined at trial by a jury; statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A) in the amount of $1,000.00; and, reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) from each and every Defendant.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered against each and every Defendant:

### COUNT I.

### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT 15 U.S.C. §§ 1692 et seq.

- for an award of actual damages pursuant to 15 U.S.C. § 1692k(a)(1) against each and every Defendant and for Plaintiff, in an amount to be determined at trial by a jury;
- for an award of statutory damages pursuant to 15 U.S.C. §1692k(a)(2)(A) in the amount of $1,000.00 against each and every Defendant, and for Plaintiff;

- for an award of costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3) against each and every Defendant and for Plaintiff; and
- for such other and further relief as may be just and proper.

Respectfully submitted,

RONALD FISHER

/s/Brandon Snodgrass
Brandon Snodgrass, Esq.
Virginia State Bar ID # 47894
Attorney for Plaintiff
P. O. Box 1417
Abingdon, VA 24212
(276) 676-2660
bsnodgrass@snodgrasslawfirm.com

/s/Matthew Felty
Matthew L. Felty, Esq.
Virginia State Bar ID # 74873
Attorney for Plaintiff
P. O. Box 1417
Abingdon, VA 24212
(276) 676-2660
mfelty@snodgrasslawfirm.com